IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC. | § | |
| | § | |
| V. | § | ACTION NO. 4:12-CV-083-Y |
| | § | |
| ALLIED PILOTS ASSOCIATION | § | |

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT, AND DENYING MOTION TO STRIKE

Pending before the Court are Defendant's Motion for Summary Judgment (doc. 19),

Plaintiff's Motion for Summary Judgment (doc. 22), and Plaintiff's Motion to Strike (doc. 34). The

Court GRANTS Defendant's summary-judgment motion and DENIES Plaintiff's motions.

I.  BACKGROUND

A.  THE CBA

Plaintiff American Airlines, Inc. ("American"), is a "common carrier by air engaged in

interstate or foreign commerce" and, thus, is subject to the requirements of the Railway Labor Act

("the RLA").  *See* 45 U.S.C.A. § 181 (West 2007).  American and defendant Allied Pilots

Association ("APA") are parties to a collective-bargaining agreement ("CBA"). The RLA requires

that any disputes arising under the parties' CBA be subject to arbitration by a board of adjustment

consisting of two American representatives, two APA representatives, and one neutral arbitrator

selected by mutual agreement of American and APA.[1]  *See id.* §§ 153 Second, 184. (AA[2] Mot. App.

249-50.)

---

[1]In some instances, the dispute may be submitted to a four-member board of adjustment.  (AA Mot. App. 249.)

[2]In citations to the summary-judgment evidence, "AA" will refer to American.

B.  TRANSITION FROM SUPER 80 TO 757/767

In 1984, Ronald Minkin began work as a pilot for American.  He ultimately became a captain flying Super 80 aircraft based out of San Francisco, California.  In 2009, Minkin bid under the CBA for the opportunity to transition to being a captain of the larger 757/767 aircraft.  (AA Mot. App. 233; Compl. 4.)  As such, Minkin would receive a higher salary; be based out of Los Angeles, California; and be supervised by the Los Angeles chief pilot, Captain Greg Smith.  (Compl. 4.)

Effective January 31, 2010, Minkin was granted the right to transition to 757/767 aircraft. (APA Mot. App. 9; AA Mot. App. 45, 238-39.)  This transition required Minkin to complete two phases to qualify as a captain for 757/767 aircraft: the training or qualification phase and the operating-experience phase.  (Compl. 4; APA Mot. App. 5-9; AA Mot. App. 46.)  The training or qualification phase consisted of classroom instruction and flight simulations.  (APA Mot. App. 9.) Minkin successfully completed the training or qualification phase on March 24.[3]  (Compl. 5-6; APA Mot. App. 9-10.)  The delay in Minkin's completing this phase was caused by Minkin's illness, which then necessitated a further delay until a simulator was available upon Minkin's return.  (APA Mot. App. 9-10.)  The Federal Aviation Administration issued an airline transport pilot rating for Minkin qualifying him to fly 757/767 aircraft.  (AA Mot. App. 46-47.)

The operating-experience phase required Minkin to successfully complete supervised flights on 757/767 aircraft under the supervision of a "check airman" sitting in the first-officer's seat on the flights.  (APA Mot. App. 6, 9.)  Minkin began this phase on April 9.  (Compl. 6.)  Minkin attempted to complete four supervised flights, but each check airman "noted numerous problems with Minkin's airmanship, including serious safety deficiencies."  (Compl. 6.)  During the operating-experience

---

[3]Although Minkin completed the "classroom" portion of the training or qualification phase on February 12, he did not complete a required flight simulation until March 24.  (Def. Mot. App. 9-10.)

2

phase, Minkin was "given a variety of extra assistance aimed at helping him succeed," but he was unable to successfully complete this phase of his transition.  (Compl. 6-8.)

## C. TERMINATION

On September 16, American convened a systems review board ("SRB") to consider Minkin's inability to complete the operating-experience phase for 757/767 aircraft.  (Compl. 8; AA Mot. App. 107.)  Captain Smith chaired the board.  (Compl. 8.)  Before the SRB review, Minkin's APA representatives notified Captain Smith that the CBA appeared to allow Minkin to return to his former status on Super 80 aircraft.  (AA Mot. App. 107; APA Mot. App. 27.)  The APA representatives specifically raised the applicability of section 17.P of the CBA:

> When a successful bidder fails to qualify for an awarded bid status within thirty (30) days from the effective date of the award – subject to weather, equipment availability, or extent of qualification requirements – such pilot shall forthwith return to his or her former bid status at such pilot's own expense.

(APA Mot. App. 31.)  Captain Smith, after conferring with American's legal and human-resources departments and another chief pilot, concluded that section 17.P did not apply to Minkin because "[t]he difficulties that Captain Minkin encountered during the [operating-experience] phase did not relate to lack of familiarity with the aircraft but to basic airmanship and below-standard . . . captain's duties."  (AA Mot. App. 116.)  The SRB determined that no more training should be provided to Minkin.  (AA Mot. App. 110.)  Captain Smith then scheduled a hearing to inform Minkin what the board had decided and to personally deliver a termination letter, but Minkin refused to attend.  (AA Mot. App. 109-10.)

Having already determined that Minkin should be terminated (AA Mot. App. 111, 113-14), Smith sent Minkin a termination letter on October 6:

I scheduled a meeting with you for October 6, 2010 to discuss the outcome of your

3

757/767 training program and personally deliver this termination letter.  However, you chose not to report for the meeting; therefore I have no choice but to mail this letter.

. . . .

I chaired [an SRB] appraisal on September 16, 2010.  The SRB concluded that you do not possess the foundation of skills necessary to meet the requirements to successfully complete training.  The amount of time devoted to your training was far in excess of the normal process.  Unfortunately, even with the additional training, you failed to consistently demonstrate that you are capable of qualifying for the position of 757/767 Captain.

Failure to qualify to perform one's duties is grounds for termination.  I regret to inform you that based on your failure to demonstrate the proficiency necessary to satisfactorily perform the duties required of a B757/767 Captain with American Airlines, and your failure to provide any reasonable expectation that you can be trained to do so, you are terminated from your employment with American effective October 6, 2010.

(APA Mot. App. 46-47.)

### D.  GRIEVANCE AND ARBITRATION UNDER THE CBA

APA grieved the termination before a five-member board of adjustment ("the board") under

the CBA.  (Compl. Ex. A; APA Mot. App. 34, 42.)  The board's jurisdiction is provided for in the

CBA:

The [board] shall have jurisdiction over disputes between any employee covered under [the CBA] or between [APA] and [American] growing out of grievances, or out of the interpretation or application of any of the terms of this [CBA].  The jurisdiction of the System Board shall not extend to proposed changes in hours of employment, rates of compensation, or working conditions covered by this [CBA].

(APA Mot. App. 43.)  APA stated that the "Questions at Issue" in its grievance were "[w]hether the

Company had just cause to terminate the employment of . . . Minkin based on the reasons described

by . . . Smith . . . in his letter dated October 6, 2010 . . . , and based on the facts of this case, the CBA

and past practice?  If not, what is the appropriate remedy?"  (Compl. Ex. A.)  APA stated that it

4

believed American did not have just cause to terminate Minkin and that American "is in violation of the [CBA] and past practice." (Compl. Ex. A.)

During hearing before the board, APA raised the issue of section 17.P and asserted that because Minkin did not complete the training or qualification phase by March 2, 2010—30 days after January 31, 2010—American was required under the CBA to return Minkin to his previous position of a Super-80 captain. (AA Mot. App. 37.) American argued that because APA did not raise section 17.P in its prehearing submission to the board, it was not properly before the board and could not be relied upon in determining whether American had just cause to terminate Minkin. (AA Mot. App. 108-09; AA Resp. App. 46-47; Compl. 10-11.) The board, with the two members appointed by American dissenting, concluded that American was on notice that section 17.P was relevant to Minkin's termination and should have been considered before terminating Minkin:

> [APA] informed Captain Smith immediately prior to the holding of the SRB that if [American], at the SRB, determined not to allow Captain Minkin to complete the 757-767 training, then pursuant to Section 17.P of the [CBA], he had the right to return to his previous bid status of SFO MD-80 Domestic. Furthermore, . . . prior to discharging [Minkin], Captain Smith discussed the applicability of Section 17.P to Captain Minkin's situation with HR Representative Theuer and an attorney from [American's] legal department. Thus, it is clear here that [American] was on notice that [APA] believed that Section 17.P of the [CBA] was applicable to Captain Minkin's situation.
>
> While it is true that there was no mention of Section 17.P in the grievance or the Submission to the . . . Board, it is clear that [American] was on notice that [APA] took the position that Section 17.P was relevant to Captain Minkin's situation. To find in favor of [American] because Section 17.P was not mentioned in either the grievance or the Submission to the . . . Board would clearly place form over substance.

(AA Mot. App. 14-15.)

The APA-appointed members and the neutral member of the board then framed the issue to be whether American had just cause to terminate Minkin:

> [T]he . . . Board must decide whether Section 17.P applies to [Minkin's] situation. If it does, then the termination of [Minkin] was in violation of the [CBA] and, therefore, was not for just cause. On the other hand, if it is found that Section 17.P does not apply to the instant case, then termination of [Minkin] must be found to be for just cause.

(AA Mot. App. 13.)  In short, APA conceded that Minkin failed to complete the transition to 757/767 aircraft and allowed that such failure could have constituted just cause for termination; but APA disputed whether American, based on section 17.P, could terminate Minkin for his failure to complete the transition.  (AA Mot. App. 13, 56; Answer 3.)  Three members of the board determined that section 17.P of the CBA applied to Minkin, requiring American to return Minkin to his previous Super-80 status; thus, American did not have just cause to terminate Minkin for his failure to successfully transition to 757/767 aircraft.  (AA Mot. App. 20, 22.)

American also argued that if section 17.P was implicated, it was applicable solely to the training or qualification phase of the transition training.  American posited that because Minkin had received an airline transport pilot rating qualifying him to fly 757/767 aircraft, section 17.P did not require American to return Minkin to his Super-80 status upon Minkin's failure to complete the operating-experience phase.  (APA Mot. App. 16.)   But the board specified that section 17.P required successful completion of both the training or qualification phase **and** the operating-experience phase.  (APA Mot. App. 17-19.)  However, the board stated that even if section 17.P were limited to a failure to complete the training or qualification phase, Minkin had failed to do so within 30 days of his successful bid.  (APA Mot. App. 19.)  The board concluded that, based on section 17.P, American did not have just cause to terminate Minkin and ordered American to return Minkin to his previous status as a Super-80 captain.  (AA Mot. App. 22.)

E.  THE INSTANT LITIGATION

6

After the board's award and after American exhausted the administrative appeals process provided for in the CBA, American filed a complaint in this Court seeking vacatur of the award. American asserted vacatur was appropriate because the arbitral board (1) exceeded its jurisdiction by considering section 17.P when it had not been properly raised, (2) exceeded its jurisdiction by ordering reinstatement after finding just cause for termination, (3) violated American's due-process rights, (4) manifestly disregarded public policy, and (5) applied and misconstrued section 17.P. *See* 45 U.S.C.A. §§ 153 First (q), 184. APA filed a counterclaim seeking enforcement of the award. (Answer 9, 13-14.) Both American and APA now seek judgment as a matter of law on their claims for affirmative relief.

## II.  STANDARDS OF REVIEW

### A.  SUMMARY JUDGMENT

When the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," summary judgment is appropriate. Fed. R. Civ. P. 56(a). "[A dispute] is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citation omitted). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that a particular fact cannot be genuinely in dispute, a plaintiff movant must (a) cite to particular parts of materials in the record (e.g., affidavits, depositions, etc.), and (b) if the defendant has cited any materials in response, show that those materials do not establish the presence of a genuine dispute as to that fact. Fed. R. Civ. P. 56(c)(1). Although the Court is

**required** to consider only the cited materials, it **may** consider other materials in the record.  *See id.* 56(c)(3).  Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992).  Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim."  *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

In evaluating whether summary judgment is appropriate, the Court "views the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor."  *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010) (citation omitted) (internal quotation marks omitted).  "[I]f no reasonable juror could find for the non-movant," summary judgment should be granted.  *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## B.  ARBITRATION AWARDS UNDER THE RLA

Review of arbitration awards under the RLA is "among the narrowest known to the law." *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 91 (1978); *see Am. Eagle Airlines, Inc. v. Air Line Pilots Assoc., Int'l*, 343 F.3d 401, 405 (5th Cir. 2003).  This is a result of the RLA's preference for settlement of disputes under the agreed-upon procedures set out in a CBA.  *See Cont'l Airlines, Inc. v. Air Line Pilots Assoc., Int'l*, 555 F.3d 399, 405 (5th Cir. 2009).  The RLA requires deference to an arbitration award under a CBA unless (1) the board failed to comply with the RLA, (2) there is evidence of fraud or corruption by the arbitral board,[4] or (3) the order did not confine itself to matters within the scope of the arbitral board's jurisdiction.  *See* 45 U.S.C.A. §§ 153 First (q), 184;

---

[4]American does not argue the presence of fraud or corruption.  (APA Mot. Summ. J. Br. 14.)

*Mitchell v. Cont'l Airlines, Inc.*, 481 F.3d 225, 231 (5ᵗʰ Cir. 2007) (applying § 153 First (q) to employees' dispute with air carrier under a CBA). Absent one of these exceptions or the judicially-created exceptions for public-policy concerns or due-process violations, the arbitral board's decision is binding and conclusive on the parties. *See Cont'l Airlines*, 555 F.3d at 406; *Mitchell*, 481 F.3d at 231; *Hall v. E. Air Lines, Inc.*, 511 F.2d 663, 663-64 (5ᵗʰ Cir. 1975). The court will defer to an arbitrated decision on any ground presented by the parties, even if that ground was not relied on by the arbitral board in its decision. *See Cont'l Airlines*, 555 F.3d at 405-06.

If an arbitral board is "arguably construing or applying the contract and acting within the scope of [its] authority," the Court may not overturn the decision even if convinced that a serious error was committed. *E. Associated Coal Corp. v. United Mine Wokers of Am., Dist. 17*, 531 U.S. 57, 62 (2000); *see United Steelworkers of Am. v. Enterprise Wheel & Car Co.*, 363 U.S. 593, 598 (1960). But an arbitral board cannot base its decision on its own "brand of industrial justice" that is outside the scope of the arbitration agreement. *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). The Court also may review an arbitral board's award "to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the [CBA]." *Delta Queen Steamboat Co. v. Dist. 2 Marine Eng'rs Beneficial Ass'n*, 889 F.2d 599, 602 (5ᵗʰ Cir. 1989). An arbitral board acts outside its CBA-granted jurisdiction if it issues a decision that is contrary to an unambiguous provision of the CBA. *See Misco*, 484 U.S. at 38; *Cont'l Airlines*, 555 F.3d at 406.

## III. DISCUSSION

American argues that there is no genuine dispute that the board exceeded the jurisdiction granted under the CBA by ordering Minkin's reinstatement after recognizing American had just

cause for the termination and by applying and misconstruing section 17.P.  American also contends that there is no genuine dispute that the board's actions violated public policy and American's due-process rights.  (AA Summ. J. Mot. 1-2.)

### A. Exceeded Jurisdiction

As stated above, the Court may vacate, modify, or remand an arbitral board's ruling if the board exceeded the authority granted it in the CBA.  *See Am. Eagle*, 343 F.3d at 406.  Importantly, the Court must defer to the board's decision "if it may be supported by *any* analysis of the . . . CBA, whether or not relied on by the [board], that 'arguably construes'" the CBA.  *Cont'l Airlines*, 555 F.3d at 406-07.  In short, this is a narrow exception to the extreme deference given to arbitral rulings.

American first asserts that by conditionally framing the issue, the board impliedly found just cause.  (Compl. 13; AA Summ. J. Mot. 12-14; AA Reply 3-4; AA Resp. 9, 11.)  Indeed, once just cause for termination is found under a CBA, an arbitral board may not review the propriety of the employer's decision to fire the offending employee rather than impose lesser discipline.  *See Am. Eagle*, 343 F.3d at 409-10; *Delta Queen*, 889 F.2d at 603-04.  The Court agrees with APA, however, that the board in this case did not find just cause to terminate Minkin.  (APA Summ. J. Mot. Br. 18-19; APA Resp. 10-12; APA Reply 10-11.)  Although the board stated that just cause for Minkin's termination could be present, it conditioned such a finding on whether section 17.P applied.  (AA Mot. App. 13.)  After concluding that section 17.P applied to Minkin, the board specifically determined that American did **not** have just cause to terminate Minkin: "[American] did violate Section 17.P of the [CBA] and, therefore, . . . [American] did not have just cause to terminate [Minkin]."  (AA Mot. App. 13.)

American next contends that the board exceeded its jurisdiction by applying and misconstruing section 17.P. (Compl. 14; AA Summ. J. Mot. 17-20; AA Reply 6-7.) By attacking how the board construed section 17.P, American is raising a prohibited challenge to the board's interpretation of the CBA. (APA Summ. J. Mot. 19-20; APA Resp. 11-12, 17-18.) *See E. Associated Coal*, 531 U.S. at 62. The board's interpretation of the CBA is shielded from this Court's review. *See Weber Aircraft, Inc. v. Gen. Warehousemen & Helpers Union Local 767*, 253 F.3d 821, 825 (5th Cir. 2001). (APA Reply 11.) The Court cannot engage American's argument that the board was "simply wrong" in applying section 17.P to Minkin. (AA Reply 6.) Even if not shielded, the board's decision is supported by the plain language of the CBA. Minkin did not complete the training or qualification phase of his transition training within 30 days of his successful bid.[5] Thus, section 17.P required American to reinstate Minkin to his status as a Super-80 captain based out of San Francisco.

American finally asserts that the board exceeded its jurisdiction by considering section 17.P when APA did not expressly raise the applicability of section 17.P in its grievance or in its pre-hearing briefing. (Compl. 12.) An arbitral board is not bound by formal pleading requirements in determining the issues before it. *See Nat'l Post Office Mailhandlers v. United States Postal Serv.*, 751 F.2d 834, 841 (6th Cir. 1985); *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tex. Steel Co.*, 639 F.2d 279, 282 (5th Cir. Unit A Mar. 1981); *Amalgamated Food & Allied Workers Union v. The Great Atl. & Pac. Tea Co.*, 415 F.2d 185, 189 (3d Cir. 1969). The applicability of section 17.P of the CBA and its effect on American's just cause to terminate Minkin was rationally inferrable from the record before the board and, thus, was within the scope of the board's

---

[5] American does not address Minkin's failure to complete the training or qualification phase within 30 days and focuses its arguments on Minkin's failure to successfully complete the operating-experience phase.

11

jurisdiction granted by the CBA. *See Transp. Commc'ns Int'l Union, AFL-CIO v. W. Weighing & Inspection Bureau*, No. 89-C-7080, 1990 WL 78311, at *2 (N.D. Ill. June 5, 1990).

As part of its argument that the board exceeded its jurisdiction in ordering Minkin's reinstatement as a Super-80 captain, American stressed that Minkin suffered from severe failings as a pilot in general and not just as a 757/767 pilot. In reply, APA proffered evidence submitted to the board that Minkin, while not being able to complete the operating-experience phase, was noted as being "satisfactory" in many areas. (APA Reply App. 78-79.) American filed a motion to strike this evidence because it was new evidence submitted in reply, which is prohibited. (Mot. to Strike 1-2.) The Court agrees with APA that this evidence was before the board and, thus, is properly before the Court. (Mot. to Strike Resp. 3.) Further, this evidence was not necessary to the Court's review of the arbitral award because the reasons for Minkin's failure to successfully transition to 757/767 aircraft and termination are not relevant to this Court's very narrow authority in reviewing such awards. The Court denies American's motion to strike.

## B. DUE PROCESS

In the context of a challenge to an arbitration award under the RLA, due process is violated if there was (1) inadequate notice, (2) a lack of an opportunity to participate in the hearing and to present evidence, or (3) a lack of impartiality on the part of the decision maker. *See Mitchell v. Cont'l Airlines, Inc.*, 481 F.3d 225, 231 (5th Cir. 2007); *Int'l Bhd. of Elec. Workers v. CSX Transp., Inc.*, 446 F.3d 714, 720 (7th Cir. 2006).

In addition to its jurisdictional argument, American casts its complaint regarding APA's failure to raise section 17.P for the board's consideration in terms of due process. (Compl. 14; AA Summ. J. Mot. 20-21; AA Reply 13-14.) In short, American argues that it did not have sufficient

notice of APA's claims because APA did not specifically plead section 17.P before the board.  (AA Reply 13.)  But as APA points out, APA informed American before the SRB review that section 17.P required American to return Minkin to his status as a Super-80 captain if no further training assistance was offered to Minkin during the operating-experience phase.  (APA Summ. J. Mot. Br. 4-5.)  American and APA presented evidence before the board regarding this issue, and American extensively argued that section 17.P did not apply to Minkin in its post-hearing brief.  (AA Mot. App. 58, 108-09; AA Resp. App. 29-34; APA Mot. App. 16-17; AA Summ. J. Mot. Br. 8 n.5.)  Indeed, the board concluded that American had sufficient notice to argue its position regarding the inapplicability of section 17.P.  (AA Mot. App. 14-15.)  The Court, therefore, cannot conclude that the board's decision that the issue was properly before it violated American's due-process rights.  *See Bhd. of Locomotive Eng'rs & Trainmen v. Union Pac. R.R. Co.*, No. 10-C-6661, 2011 WL 5828129, at \*6 (N.D. Ill. Nov. 18, 2011); *cf. Nat'l Gypsum Co. v. Oil, Chem. & Atomic Workers Int'l Union*, 147 F.3d 399, 402 (5th Cir. 1998) (recognizing deference given to arbitrator's determination of which issues are properly before him).

American additionally argues that the board violated its due-process rights by not allowing American to introduce evidence of Minkin's "piloting deficiencies" and to show "that Minkin was terminated for safety issues."  (AA Summ. J. Mot. 21; AA Resp. 14.)  Captain Smith testified, however, regarding Minkin's performance during the operating-experience phase and Minkin's lack of "basic airmanship."  (AA Mot. App. 111-12, 114-15.)  American was not prohibited from introducing evidence of Minkin's lack of airmanship skills.  Even if such evidence were relevant to the board's determination that section 17.P applied to Minkin (AA Mot. App. 117; APA Reply 13), American was allowed to admit such evidence.  Merely because American was not allowed to

introduce the quantum of evidence it desired it has not suffered a due-process violation.  *See Bhd. of Locomotive Eng'rs v. St. Louis Sw. Ry. Co.*, 757 F.2d 656, 661 (5th Cir. 1985); *The Me. Cent. R.R. Co. v. Bhd. of Maint. of Way Emps.*, 691 F. Supp. 509, 515 (D. Me. 1988); *cf. Misco*, 484 U.S. at 40 (recognizing reviewing courts may not impose additional evidentiary requirements on arbitral bodies); *United Transp. Union v. Gateway W. Ry. Co.*, 284 F.3d 710, 712-13 (7th Cir. 2002) (noting due-process requirements relaxed in arbitral proceedings).

## C.  PUBLIC POLICY

American contends that the board's reinstatement of an unsafe pilot violates public policy and justifies vacatur of the award (AA Summ. J. Mot. 15-17; AA Resp. 12-14; AA Reply 5):

> [T]he Award violates a well-defined and dominant public policy by requiring American to reinstate a pilot who American determined is unsafe and lacks the airmanship skills necessary to fly for American—a determination that was made after extensive review processes . . . .  Compelling American to reinstate Minkin breaches American's statutory duty to ensure passenger safety. [*See* 49 U.S.C. § 44702(b)(1)(A).]  The Arbitrator's Award should be overturned because it violates a statutorily defined public policy.

(AA Summ. J. Mot. 15-17.)  APA argues that American is attempting to "apply a public policy veto" to the board's decision that would act as "a sword with which to sweep away arbitration decisions with which it disagrees or nullify longstanding contract provisions like Section 17.P to which it has agreed and is bound."  (APA Reply 1; APA Resp. 13.)

The Court agrees with American that an arbitration award of reinstatement under the RLA may be vacated if such reinstatement violates a well-defined and dominant public policy.  *See BNSF Ry. Co. v. Bhd. of Locomotive Eng'rs & Trainmen*, 524 F. Supp. 2d 818, 825-26 (N.D. Tex. 2007) (McBryde, Dist. J.).  However, the Court must "be particularly chary when divining public policy from some laws" and is "severely circumscribed" in its ability to set aside arbitration awards on this

14

basis. *Cont'l Airlines*, 555 F.3d at 418.

Here, the record shows that Minkin would be required to requalify on the Super 80 if returned to his prior position under section 17.P. (APA Resp. App. 53, 57, 61-62, 73.) To attempt to discern the probabilities that Minkin will fly again and that he would do so in a way that implicates public policy would be a prohibited "exercise in factfinding." *Id.* at 419-20. If American and the FAA determine in the future that Minkin is fit to fly Super 80 aircraft, it is not this Court's present "job to meddle." *Id.* at 420. The Court cannot conclude that requiring American to comply with section 17.P of the CBA violates public policy. *See id.* 420-21; *Atchison, Topeka & Santa Fe Ry. Co. v. United Transp. Union (CT&Y)*, 175 F.3d 355, 358 (5ᵗʰ Cir. 1999); *cf. BNSF Ry.*, 524 F. Supp. 2d at 826-27 (holding arbitral board's failure to follow federal-railroad regulation in employee-discipline award violated public policy and warranted vacatur of award).

## D.  ATTORNEY'S FEES

APA contends that it is entitled to an award of attorneys' fees because American's refusal to comply with the board's award was not justified. (APA Summ. J. Mot. Br. 24-25.) Indeed, attorneys' fees are awardable if a challenge to an arbitral award under the RLA is without justification. *See Bruce Hardwood Floors, Div. of Triangle Pac. Corp. v. UBC, S. Council of Indus. Workers, Local Union No. 2713*, 103 F.3d 449, 453 (5ᵗʰ Cir. 1997); *Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO-CLC v. Ingram Mfg. Co.*, 715 F.2d 886, 892 (5ᵗʰ Cir. 1983). Generally, a challenge is without justification if the company's arguments against the award were in bad faith, unjustified, lacking a reasonable chance of prevailing, or frivolous. *See Air Line Pilots Ass'n Int'l v. Tex. Int'l Airlines, Inc.*, 567 F. Supp. 78, 81 (S.D. Tex. 1983). Here, American's arguments were not so without justification that they could be characterized as frivolous or in bad faith. Thus, APA

is not entitled to an award of attorneys' fees under the RLA.[6]

## IV.  CONCLUSION

The Court is extremely limited in its review of arbitration awards under the RLA.  American has failed to raise a genuine dispute that the board exceeded its jurisdiction granted under the CBA, violated American's due-process rights, or violated public policy in ordering Minkin's reinstatement.  Indeed, many of American's arguments go to the evidence the board did or did not consider in reaching its decision, which this Court is not allowed to delve into.  Because none of the statutory grounds for review are found in the summary-judgment evidence, the award must be AFFIRMED.  However, American's contentions were not so unjustified as to warrant an award of attorneys' fees in APA's favor.

SIGNED November 2, 2012.

_Terry R. Means_

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

---

[6]The Court notes that it is doubtful that attorneys' fees are recoverable in RLA cases involving air carriers because the RLA specifically exempts air carriers from the RLA provision allowing the recovery of attorneys' fees.  *See* 45 U.S.C.A. § 181 (West 2007).  Although American does not raise this argument in opposition to APA's fees argument, this is an additional basis under which to deny APA's request.  *See Air Line Pilots Ass'n, Int'l v. Nw. Airlines, Inc.*, 415 F.2d 493, 498-99 (8th Cir. 1969); *Office & Prof'l Emps. Int'l Union, Local 109 v. Air Methods Corp.*, No. 09C0982, 2011 WL 1526971, at *1 (E.D. Wis. Apr. 20, 2011).